IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MAGNESITA REFRACTORIES
COMPANY,

          Plaintiff,

v.

TIANJIN NEW CENTURY
REFRACTORIES CO., LTD.,
YINGKOU NEW CENTURY
REFRACTORIES LTD., NEW
CENTURY REFRACTORY
SOLUTIONS INC., and DONALD
GRIFFIN (an individual and d/b/a
TECHNICAL CONSULTANT'S
LABORATORIES),

          Defendants.

Case No.

## COMPLAINT

Plaintiff Magnesita Refractories Company ("Magnesita"), by and through its attorneys, for its Complaint against Tianjin New Century Refractories Co., Ltd. ("TNCR"), Yingkou New Century Refractories, Ltd. ( "YNCR"), New Century Refractory Solutions Inc. ("NCR") (collectively, "the TNCR Defendants"), and Donald Griffin ("Griffin"), an individual and d/b/a Technical Consultant's Refractories ("collectively, Defendants"), alleges and states as follows:

## THE PARTIES

1.      Magnesita is a company organized under the laws of the State of Pennsylvania having its principal place of business at 425 South Salem Church Road, York, Pennsylvania.

2.      Magnesita is a leading producer of refractory materials and products. Offering over 25 thousand different types of refractory materials and products, Magnesita supplies various industries, including producers of cement, glass, steel, and other metals.

3.      Among other activities, Magnesita researches, develops, manufactures, and sells insulating fired and tempered dolomite bricks to customers internationally and throughout the United States, including in this District.

4.      Magnesita protects certain commercially valuable information relating to its refractory technology as trade secrets.  Magnesita's trade secret information includes, but is not limited to: (i) the compositions of its fired and tempered dolomite brick products; (ii) the processes of manufacturing and producing the bricks; (iii) the optimization of brick properties and functionality for a given process, particular application, and/or particular process conditions; and (iv) associated confidential marketing and sales information.

5.      Defendant Griffin is a Pennsylvania resident, and on information and belief resides at 2634 Mayfair Lane, York, Pennsylvania, 17408.

6.     On information and belief, Defendant TNCR is a company with a principal place of business at A-1207 ICTC, 59 Machang Rd, Tianjin, 300203, China.

7.     On information and belief, Defendant YNCR is a company with a principal place of business at Shifo Village, Shifo Town, Dashiqiao City, Liaoning Province, China.

8.     On information and belief, Defendant NCR is a California corporation with a principal place of business at 440 Boulder Ct. 100C, Pleasanton, CA 94566.

9.     On information and belief, the TNCR Defendants are commonly owned.

10.     For example, TNCR holds out NCR on its website, http://www.tncr.com, as "TNCR US" and as "A subsidiary of TNCR."

11.     On information and belief, the TNCR Defendants have a presence and/or engage in other systematic business activities within the state of Pennsylvania, either directly and/or through its agents and assigns, including, but not limited to the sale of fired dolomite brick products, including those alleged in this complaint to be manufactured with misappropriated trade secrets of Magnesita.

12.     On information and belief, the TNCR Defendants produce refractory products and materials, including both fired and tempered dolomite brick products and compete directly with Magnesita.

## NATURE OF THE CLAIM

13.     This is an action for injunctive and monetary relief for:  (1) trade

secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. §

1836 et seq. ("DTSA"); (2); trade secret misappropriation under the Pennsylvania

Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 *et. seq.* ("PUTSA"); (3) violation

of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961, *et*

*seq.* ("RICO");  (4) unfair competition under Pennsylvania common law; (5) unfair

competition under the Lanham Act; (6) breach of contract; (7) conversion under

Pennsylvania common law; and (8) civil conspiracy.

14.     Griffin is a former employee of Magnesita who retired from the

company on or about December 2014 after close to 35 years of employment.  Prior

to his retirement, Griffin rose to Magnesita's Research and Development and

Quality Control Director, overseeing all research and development, and was based

at Magnesita's York, Pennsylvania facility.  Griffin supervised research,

development, and manufacture of numerous products, including Magnesita's fired

and tempered dolomite bricks.

15.     While still employed by Magnesita, Griffin engaged in deliberate and

repeated actions to wrongfully copy, transmit and use Magnesita's proprietary and

confidential information and trade secrets regarding its technology for the

manufacture of refractory products, including Magnesita's fired and tempered dolomite bricks for the purpose of profiting for himself and others.  Despite being fully aware of the highly confidential, proprietary and trade secret status of Magnesita's valuable refractory technology, and in violation of various contractual obligations, Griffin has intentionally and wrongfully copied, transmitted, and used, and will likely continue to use Magnesita's confidential information regarding Magnesita's valuable refractory technology.

16.     Moreover, on further information and belief, and in violation of various contractual obligations, Griffin has distributed and made known to a competitor of Magnesita, the TNCR Defendants, who now employ Griffin and other ex-employees of Magnesita, Magnesita's proprietary and confidential information and trade secrets improperly obtained while he was employed at Magnesita.

17.     Prior to 2015, the TNCR Defendants did not offer and had no ability to offer either fired or tempered dolomite bricks in competition with Magnesita. However, the TNCR Defendants raided Magnesita to obtain the trade secrets and know-how they did not have the time or resources to develop themselves, and which Magnesita had spent millions of dollars and decades to develop.

18.     The TNCR Defendants now directly compete with Magnesita in the sale of both fired and tempered dolomite bricks and, on information and belief,

5

began producing these bricks on or about the time that the TNCR Defendants hired Griffin. On information and belief, the fired and tempered dolomite bricks produced by the TNCR Defendants use and/or incorporate Magnesita's proprietary and confidential information and trade secrets.

19.     Defendants' actions are wrongful, and Magnesita seeks relief from this Court to address their conduct.

20.     On information and belief, the unlawful conduct of Defendants began at least as early as 2014 and continues to this day.

## JURISDICTION AND VENUE

21.     This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Magnesita has asserted federal claims under RICO, DTSA, and the Lanham Act. Pursuant to 28 U.S.C. § 1367, the Court also has supplemental or pendant jurisdiction over Magnesita's other claims insofar as those claims form part of the same case or controversy as the federal question claims and derive from a common nucleus of operative facts.

22.     This Court has personal jurisdiction over Defendants under 42 Pa. C.S. § 5322, *et seq*., because Defendants have caused tortious injury in Pennsylvania by acts and omissions within Pennsylvania, and because Defendants have engaged in a persistent course of conduct in and out of Pennsylvania which has caused tortious injury to Magnesita in Pennsylvania by their acts and omissions

complained of herein. Pursuant to 42 Pa. C. S. § 5322, *et seq*., the exercise of personal jurisdiction over Defendants comports with due process.  On information and belief, the TNCR Defendants conspired with Griffin to obtain Magnesita's trade secret information.  Additionally, on information and belief, the TNCR Defendants, through its employee/Technical Director Griffin, have sold and continue to sell fired dolomite bricks incorporating one or more of Magnesita's trade secrets to Harbison Walker International ("HWI").  HWI is based in Pittsburgh, Pennsylvania and has operations throughout the state of Pennsylvania.

23.    TNCR describes its relationship with HWI as "Partner with HWI" and that HWI is TNCR's "sourcing agent," "licensee," "joint-venture partner," and "sales agent."  A copy of a presentation provided by TNCR describing its relationship with HWI is attached to this Complaint as **Exhibit A**.

24.    On information and belief, the TNCR Defendants additionally operate in the U.S. through a U.S.-based subsidiary, NCR.  On its website, TNCR lists a Pittsburgh area code phone number, 412-736-6733, as well as a California area code phone number, 925-953-8732, as the contact information for NCR.

25.    Magnesita's confidential and trade secret information improperly taken and used by Griffin resides on various computer servers within Magnesita including computer systems located in York, Pennsylvania.  On information and belief, Griffin accessed Magnesita's confidential and trade secret information,

which is stored on Magnesita's servers in York, Pennsylvania, in furtherance of his misappropriation of that confidential and trade secret information. All of the Magnesita confidential and trade secret information improperly taken and used, by Griffin is owned by Magnesita, and used in the business activities of Magnesita, including in York, Pennsylvania.

26.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) and/or (b)(3), as Magnesita resides in this judicial District under 28 U.S.C. § 1391(c)(2) and certain of the events giving rise to Magnesita's claims, including the development of the trade secrets in questions as well as the misappropriation of those trade secrets by Defendants, occurred in this District.

## MAGNESITA'S TRADE SECRETS

27.     Magnesita develops, manufactures, and provides refractory materials and products, including dolomite-based refractory materials and products, to the industrial market. The company offers over 25 thousand different products based on, e.g., doloma, magnesia, and alumina raw materials. In many cases, the raw materials for Magnesita's products are mined directly by Magnesita.

28.     Magnesita's products are employed in high temperature processes relating to the production of, e.g., steel, aluminum, cement, and glass.

29.     Magnesita's suite of products include bricks, such as carbon-bonded doloma and magdol, fired doloma and magdol, fired magnesia, fired alumina, mag-

carbon and tempered magnesia, and alumina mag-carbon; and mixes, including plastics, backfills, seals, gunning, mortars, covering powders, ceramic adhesives, fettling, and rams.  The company's products also include special shapes, such as well blocks, purging plug blocks, tapholes, slide gate plates, submerged entry nozzles, ladle nozzles, ladle bottoms and impact pads, tundish nozzles, and purging plugs.

30.    Magnesita has continuously engaged and invested in research and development regarding such products, including its fired dolomite bricks and tempered dolomite bricks.  Over the course of decades, Magnesita has spent millions of dollars in developing its fired and tempered dolomite brick products.

31.    The knowledge gained by Magnesita relating to its products is the result of its experience and extensive research and development efforts over several decades.  Such information includes, for example, specific refractory compositions, machinery parameters, and proprietary processes used to manufacture Magnesita's products as well as financial and customer information related to such products.  Magnesita's valuable trade secret information also includes processes for optimizing brick properties/functionality for specific processes, applications, or particular process conditions. Magnesita's valuable, proprietary information is confidential, and constitutes protected trade secrets within the meaning of both DTSA and PUTSA.  Magnesita derives both substantial

economic value, as well as competitive advantages from this information, because this information is not publicly known.

32.    Magnesita takes reasonable measures to protect its trade secrets and confidential information.

33.    Among other measures, Magnesita requires its employees to sign and agree to Magnesita's Code of Ethics ("the Code of Ethics").  A copy of the Code of Ethics is attached to this Complaint as **Exhibit B**.

34.    By signing the Code of Ethics, employees acknowledge that

Providing third parties with information or property belonging to or concerning MAGNESITA is forbidden. The term "Confidential Information" means any and all data and other information related to the business of Employer that has value to Employer and is not generally known to the public (whether or not it constitutes a trade secret). Such Confidential Information includes, but is not limited to, data or information relating to any of Employer's past, present or future: inventions, formulas, technical developments and methods, whether or not patentable or reduced to practice; products or services; "know-how"; research initiatives, reports, designs, photographs, plans, projects, processes, technology and technical configurations; manufacturing or testing methods, operations or equipment; fees, costs and pricing structures; mailing lists; lists of existing or prospective client or contracts, customers, vendors, referrals and all other data related thereto; the identity of customers; customer rates and schedules; customer preferences; techniques of doing business; financial and profit information; marketing strategies and information; competitive information; advertising; budgeting and compensation information; accounting and business methods; analyses; reports; manuals; computer software, including operating systems, source and object codes, applications, program listings and flow charts; databases; trademarks and brand names under development and information relating thereto; trade secrets; the existence or terms of any contracts or potential contracts; personal or personnel information

not accessible by the public and, in particular, not known to competitors of the Employer; any information, material or documents that the Employer identify or treat as confidential or with respect to which they are subject to confidentiality obligations owed to third parties, in all cases whether or not recorded in a document, disk, computer tape or other device or means of storing or recording data; and materials or information embodying or developed by use of any such Confidential Information. Confidential Information does not include information that is or becomes publicly available through no fault of Employee.

(Ex. B, 4.1.)

35.    A true and correct copy of Griffin's 2009 acknowledgement of the Code of Ethics is attached as **Exhibit C**.

36.    Magnesita also routinely requires employees with access to company confidential or proprietary information to execute non-disclosure agreements.

37.    Magnesita also implements significant computer network security. Magnesita allows only authorized persons to have access to confidential information stored on computers, and therefore provides its employees with secure passwords and limits access to company confidential information through computer access profiles which are specific to the types of information accessible by a particular access profile, as well as the permissions and privileges relating to that information.

38.    Additionally, Magnesita prohibits: (1) the storage of confidential information on any public portion of its network; (2) forwarding confidential

information by email without proper labeling and authorization; and (3) forwarding confidential information from work email accounts to personal email accounts.

## GRIFFIN'S UNLAWFUL ACTIVITIES

39.    For almost 35 years, Griffin worked for Magnesita and Magnesita-predecessor companies, including the J.E. Baker Company and LWB Refractories Company.

40.    For most of his employment with Magnesita and its predecessors, Griffin worked at the York, Pennsylvania facility which housed operations for J.E. Baker Company, then LWB Refractories and, subsequently, Magnesita.

41.    Griffin's employment spanned from in or about August, 1980 (when he was hired by J.E. Baker Company) to in or about December, 2014 (when he offered his resignation to Magnesita).

42.    On August 15, 1980, Griffin executed a Secrecy Agreement with J.E. Baker Company, in which Griffin agreed, *inter alia*, that he

> …will not hereafter disclose to any third party, except to fellow employees of Baker as required by the duties of his Baker employment or make use of, except for Baker, any confidential Baker information (a) which may be disclosed to him by Baker of a third party because of his Baker employment, or (b) which he may develop or learn in the court of his Baker employment; except to the extent that such information has become public information without fault on his part.

A copy of the Baker Secrecy Agreement is attached to this Complaint as **Exhibit D**.

43.     On February 3, 2003, Griffin executed a Confidentiality and Noncompetition Agreement with LWB Refractories Company, in which Griffin agreed, *inter alia*, that

> All Confidential information imparted to or learned by the Employee during the course of his employment by the Company or any Affiliated Corporation shall not be disclosed to anyone outside the employment of the Affiliated Corporations, unless such disclosure is expressly authorized, or such information has become generally available to the public.  If Employee ceases employment by any of the Affiliated Corporations for any reason, he shall not take with him any document or paper containing Confidential Information.

A copy of the LWB Refractories Company Confidentiality and Noncompetition Agreement is attached to this Complaint as **Exhibit E**.

44.     Over the course of his lengthy employment with Magnesita and its predecessors, Griffin developed an in-depth knowledge of the confidential and proprietary technology underlying the companies' broad product base, including, but not limited to the composition of Magnesita's fired and tempered dolomite bricks and the process conditions under which such products are made.

45.     Throughout his employment, including during his tenures as Technology Director—North America, Technology Director—Asia, and Research and Development and Quality Control Director—North America for Magnesita, Griffin had full and complete access to and used much of the Company's most sensitive confidential and trade secret information about its fired and tempered dolomite brick technology.

46.     Griffin was aware that Magnesita's confidential and proprietary technology was maintained and protected as trade secrets.

47.     Griffin was also aware that Magnesita's trade secrets were valuable and provided Magnesita with competitive and economic benefits over its competitors.

48.     On or about May 25, 2010, Griffin accepted a transfer to Magnesita's operations in Asia as Director Technology Asia, based in Shanghai, China.

49.     On information and belief, during Griffin's tenure as Director Technology Asia, Griffin made contact with TNCR.

50.     In 2014, Griffin returned to Magnesita's York, Pennsylvania location and held the position of Research and Development and Quality Control Director—North America until December 2014.

51.     Griffin ceased employment with Magnesita in or about December 2014.

52.     The reason given by Griffin for his departure was that he intended to retire.

53.     Prior to his departure, Griffin forwarded a significant number of emails from his Magnesita email account to Griffin's personal Gmail account. Magnesita learned of Griffin's improper email forwarding following a forensic

computer investigation which Magnesita conducted upon learning that Griffin had joined TNCR.

54.    Griffin forwarded many of these emails within the last six months of his employment with Magnesita.

55.    The emails forwarded by Griffin to his personal Gmail account included information regarding Magnesita's trade secret formulations and processes.

56.    In particular, several of the forwarded emails relate to the formulation and manufacture of Magnesita's fired and tempered dolomite bricks.

57.    On information and belief, in addition to forwarding emails to Griffin's personal Gmail account, Griffin also downloaded Magnesita's proprietary information to an external hard drive.

58.    Griffin did not retire following his departure from Magnesita.  Instead, Griffin became self-employed, operating as Technical Consultant's Refractories ("TCR") from January 2015 through September 2015.

59.    Following Griffin's self-employment at TCR, Griffin became employed by the TNCR Defendants.

60.    On information and belief, Griffin holds the same or equivalent position with the TNCR Defendants as he did at Magnesita - Technical Director.

61.    After learning that Griffin did not fully retire as Griffin had represented, but instead became employed by the TNCR Defendants, Magnesita uncovered Griffin's email activities.

62.    By way of counsel, Magnesita contacted Griffin and TNCR through letters beginning on June 14, 2016.  In these letters, Magnesita expressed concern over Defendants' activities and notified Griffin that it had uncovered Griffin's series of forwarded emails.  Copies of the letters sent to Griffin and TNCR are attached to this Complaint, respectively, as **Exhibits F** and **G**.

63.    Griffin responded that his Gmail account "was set up specifically for work purposes" which included "enabl[ing] me to have access to technical files etc."  Griffin alleged that he "never went back to this Gmail account to look at the emails until in May 2016 when [he] was told that Magnesita informed Dr. Dai that [he] had forwarded emails to [his] personal account."  Griffin's response further included a snapshot of his Gmail inbox, depicting numerous emails containing sensitive Magnesita information.  A copy of Griffin's response is attached to this Complaint as **Exhibit H**.

64.    On information and belief, Griffin still has within his possession, custody or control the information he wrongfully transmitted to his personal Gmail account from Magnesita's computer systems, including internal files of the company.  On information and belief, Griffin has delivered and will continue to

deliver, Magnesita's confidential and trade secret information to unauthorized third parties, including TNCR.

66.     On information and belief, Griffin has wrongfully and illegally taken, copied, transmitted, or otherwise misappropriated, Magnesita's proprietary, confidential, and trade secret information, including information and data residing in electronic form within Magnesita's computer servers, and/or disseminated, delivered, or distributed it to third parties, including TNCR.

**TNCR'S UNLAWFUL ACTIVITIES**

66.     The TNCR Defendants were founded by owner Dai Yong-Shan in 2003.  (Ex. A, at p. 3)

67.     In a presentation provided by the TNCR Defendants to Magnesita's customers, TNCR holds itself out as having "Totally Foreign Upper Management!!!!!"  (*Id.*, at p. 7)

68.     Directly following this statement, the TNCR Defendants' presentation lists the biographical information of three employees who are all ex-Magnesita employees, including Steve Hennel ("Hennel"), Griffin, and Gregg Greiss ("Greiss").  (*Id.*, at pp. 8-10)  The presentation prominently displays in this biographical information that each previously had significant employment tenures with Magnesita and its predecessor companies.

17

69.    The description of the TNCR Defendants' products immediately follows the biographical information of TNCR's "Foreign Upper Management" (Hennel, Griffin, and Greiss).  The TNCR Defendants list various refractory products, including both fired and tempered dolomite bricks, and state that "Formulations are all Foreign Technologies."  (*Id.*, at p. 11)

70.    In this same presentation, in the section entitled "Why TNCR/YNCR??," TNCR states that one "benefit" of choosing TNCR is "Chinese produced cost base but under foreign management and Technology."

71.    On information and belief, the Foreign Technologies/Foreign Technology referred to by the TNCR Defendants are Magnesita's confidential and trade secret information.

72.    On information and belief, the Foreign Technologies/Foreign Technology referred to by the TNCR Defendants are Magnesita's confidential and trade secret information provided to the TNCR Defendants by Griffin.

73.    On information and belief, the TNCR Defendants are providing this presentation to Magnesita's actual and prospective customers and are using it to interfere with Magnesita's actual and prospective business.

74.    On information and belief, the TNCR Defendants sell fired dolomite bricks, including the products branded as Syn-Dol GT30 and Syn-Dol GT50, to HWI in the United States.

75.    On information and belief, the TNCR Defendants sell tempered dolomite bricks, including the products branded as Syn-Dol GTR 20-3 and Syn-Dol GTR 20-6, to Nucor in the United States.

76.    On information and belief, Griffin engaged in the aforementioned unlawful activities at the direction of the TNCR Defendants.

77.    On information and belief, the TNCR Defendants did not sell fired or tempered dolomite brick products until after they hired Griffin.

78.    On information and belief, the TNCR Defendants were not able to make and sell fired or tempered dolomite brick products without Magnesita's confidential and trade secret information provided to the TNCR Defendants by one or more of Griffin, Greiss, and Hennel.

79.    On information and belief, the TNCR Defendants lured Griffin, Greiss, and Hennel away from their employment with Magnesita in an effort to gain access to Magnesita's confidential and trade secret information.

80.    On information and belief, the TNCR Defendants have received Magnesita's proprietary, trade secret, and confidential information regarding Magnesita's refractory technology from at least Defendant Griffin, with knowledge that such information belonged to Magnesita, was of a confidential and trade secret nature and was acquired and by improper means.

81.     On information and belief, the TNCR Defendants have received Magnesita's proprietary, trade secret, and confidential information regarding Magnesita's refractory technology from one or more of Griffin, Hennel, and Greiss with knowledge that such information was a valuable asset of Magnesita.

82.     On information and belief, the TNCR Defendants are selling fired and tempered dolomite brick products unlawfully incorporating Magnesita's trade secrets at a price designed to siphon market share away from Magnesita with full knowledge that by doing so, the TNCR Defendants will cause price erosion for Magnesita products and damage to Magnesita.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### (DTSA - 18 U.S.C. §1831, *et seq.*)
### (All Defendants)

83.     Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Magnesita operates its business and sells its products in interstate and foreign commerce, transacting and doing business with customers, vendors and others internationally and throughout the United States, including in York, Pennsylvania.

85.     Magnesita has conceived, researched, and developed trade secrets, as that term is defined under DTSA.

86.     Among other information, Magnesita's trade secrets encompass confidential and proprietary intellectual property, including but not limited to information related to Magnesita's fired and tempered dolomite brick technology, as well that associated with its customers, prospective customers and vendor relationships.

87.     Magnesita obtains actual and potential economic value from its trade secrets not being generally known or readily ascertainable by reverse engineering or through proper means by another person or entity who could obtain economic value from the disclosure or use of the information.

88.     Magnesita obtains economic value from its trade secrets devoting substantial resources, time and investment to creating, developing and using such information.

89.     As is detailed in the foregoing allegations, Magnesita has taken reasonable steps and precautions to safeguard its trade secrets and to limit and restrict others outside of Magnesita from knowing, readily ascertaining or using its trade secrets.

90.     Defendants have willfully and maliciously engaged in various acts of misappropriation regarding Magnesita's trade secrets, including but not limited to the improper acquisition and use of the Magnesita trade secrets related to fired and tempered dolomite brick technology.  Defendant Griffin improperly acquired and

transmitted Magnesita's trade secrets while he knew or had reason to know that his acquisition was improper and/or in violation of his duty to maintain the confidentiality and/or secrecy of the trade secrets.

91.     On information and belief, on or about the time they employed Griffin, the TNCR Defendants improperly acquired Magnesita's trade secrets while knowing or having reason to know that the trade secrets had been acquired by improper means.

92.     Defendants have further misappropriated Magnesita's trade secrets by using and/or disclosing the trade secrets that they knew or had reason to know were derived through improper means and/or in breach of a duty to maintain the confidentiality and/or secrecy of the trade secrets.

93.     As a result of Defendants' improper misappropriation, disclosure and use of Magnesita's trade secrets, Defendants have violated DTSA.

94.     As a direct and proximate result of Defendants' violations of DTSA, Magnesita is entitled to full compensatory and consequential damages, as well as full attorneys' fees, costs and expenses.

95.     Defendants have been and will be, by virtue of their misappropriation of Magnesita's trade secrets, unjustly enriched in an amount to be proven at trial.

96.    In the event that neither Magnesita's actual damages, nor Defendants' unjust enrichment are provable, Magnesita is entitled to a reasonable royalty for using its trade secrets, as provided by 18 U.S.C. § 1836(b)(ii).

97.    Defendants' misappropriation and disclosure of Magnesita's trade secrets was for improper financial gain and has been willful and malicious. Magnesita is therefore entitled to exemplary or punitive damages pursuant to 18 U.S.C. § 1836(b)(3).  Magnesita is further entitled to recover attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(C).

98.    Defendants' DTSA violations have caused and will continue to cause Magnesita irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### (PUTSA - 12 Pa. C. S. § 5301, *et seq.*)
### (All Defendants)

99.    Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

100.   Magnesita operates its business and sells its products in interstate commerce, transacting and doing business with customers, vendors and others throughout the United States and in this judicial District.

101.   Magnesita has transacted business relating to trade secrets that it conceived, researched, and developed and as that term is defined under PUTSA.

102.   Among other information, and as set forth above, Magnesita's trade secrets encompass confidential and proprietary intellectual property, including but not limited to information related to Magnesita's fired and tempered dolomite brick technology, as well as that associated with its customers, prospective customers and vendor relationships.

103.   Magnesita obtains actual and potential economic value from its trade secrets not being generally known or readily ascertainable through proper means by another person or entity who could obtain economic value from the disclosure or use of the information.

104.   Magnesita obtains substantial economic value from its trade secrets devoting substantial resources, time and investment to creating, developing and using such information.

105.   As is detailed in the foregoing allegations, Magnesita has taken reasonable steps and precautions to safeguard, limit and restrict others outside of Magnesita from knowing, readily ascertaining or using its trade secrets.

106.   Defendants have willfully and maliciously engaged in various acts of misappropriation regarding Magnesita's trade secrets, including but not limited to the improper acquisition, disclosure, and use of the Magnesita trade secrets related to fired and tempered dolomite brick technology.  Defendant Griffin improperly acquired Magnesita's trade secrets while he knew or had reason to know that his

acquisition was improper and/or in violation of their duty to maintain the confidentiality and/or secrecy of the trade secrets.

107.   On information and belief, the TNCR Defendants improperly acquired Magnesita's trade secrets from Griffin, knowing or having reason to know that the trade secrets had been acquired by improper means.

108.   All Defendants have further misappropriated Magnesita's trade secrets by using and/or disclosing the trade secrets that they knew or had reason to know were derived through improper means and/or in breach of a duty to maintain the confidentiality and/or secrecy of the derived trade secrets.

109.   As a result of Defendants' improper misappropriation, disclosure and use of Magnesita's trade secrets, Defendants have violated PUTSA.

110.   As a direct and proximate result of Defendants' violations of PUTSA, Magnesita is entitled to full compensatory and consequential damages, as well as full attorneys' fees, costs and expenses.

111.   Because Defendants' PUTSA violations have been willful and malicious, Magnesita is entitled to exemplary damages for any actual loss and any unjust enrichment.

112.   Defendants' PUTSA violations have caused and will continue to cause Magnesita irreparable harm that is not adequately remedied at law and that requires preliminary and permanent injunctive relief.

## COUNT III – RICO – 18 U.S.C. § 1962(c)
### (All Defendants)

113.   Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

114.   Griffin perpetrated a scheme with the TNCR Defendants whereby they misappropriated Magnesita's trade secrets in violation of DTSA, as further set forth in Count I of this Complaint.

115.   In violation of 18 U.S.C. § 1832(a)(1), Griffin and the TNCR Defendants misappropriated Magnesita's trade secrets, with the intent to convert Magnesita's trade secrets, which trade secrets are related to Magnesita's fired and tempered dolomite bricks sold in interstate commerce, to the economic benefit of himself and the TNCR Defendants, and knowing that the conversion of Magnesita's trade secrets would harm Magnesita.

116.   In violation of 18 U.S.C. § 1832(a)(2), Griffin mailed, transmitted, sent, and otherwise conveyed Magnesita's trade secret information without authorization, with the intent to convert Magnesita's trade secrets, which trade secrets are related to Magnesita's fired and tempered dolomite bricks sold in interstate commerce, to the economic benefit of himself and the TNCR Defendants, and knowing that the conversion of Magnesita's trade secrets would harm Magnesita.

117.   In violation of 18 U.S.C. § 1832(a)(3), the TNCR Defendants received Magnesita's trade secrets, secrets, knowing the same to have been stolen or appropriated, obtained, or converted without authorization, with the intent to convert Magnesita's trade secrets, which trade secrets are related to Magnesita's fired and tempered dolomite bricks sold in interstate commerce, to the economic benefit of the TNCR Defendants, and knowing that the conversion of Magnesita's trade secrets would harm Magnesita.

118.   In violation of 18 U.S.C. § 1832(a)(3), Griffin possessed Magnesita's trade secrets, knowing the same to have been stolen or appropriated, obtained, or converted without authorization, with the intent to convert Magnesita's trade secrets, which trade secrets are related to Magnesita's fired and tempered dolomite bricks sold in interstate commerce, to the economic benefit of himself and the TNCR Defendants, and knowing that the conversion of Magnesita's trade secrets would harm Magnesita.

119.   The above violations are ongoing and continuing.

120.   Griffin, conspiring with the TNCR Defendants, further perpetrated a scheme whereby Magnesita's misappropriated trade secrets were used in the development of the TNCR Defendants' fired dolomite bricks.

121.   Griffin, conspiring with the TNCR Defendants, sold the TNCR Defendants' fired dolomite bricks, which were produced using Magnesita's

misappropriated trade secrets, to HWI for distribution throughout the United States.

122.   Griffin conspired with the TNCR Defendants for the purpose of unlawfully utilizing Magnesita's trade secret and other proprietary information to steal and otherwise misappropriate Magnesita's business opportunities and prospective contracts.

123.   The TNCR Defendants constitute an enterprise, and the association between Griffin and the TNCR Defendants constitutes an enterprise.

124.   On information and belief, the TNCR Defendants engaged in a campaign of hiring ex-Magnesita employees (including Griffin, Hennel, and Greiss) in an attempt to gain access to Magnesita's confidential and trade secret information,

125.   Defendants, by and through their improper and fraudulent activities and wrongful conduct, willfully and with actual knowledge, agreed to and did conduct and participate in the conduct of enterprise affairs through a pattern of racketeering activity for the purposes of intentionally misappropriating Magnesita's trade secret and other proprietary information.

126.   In furtherance of their fraudulent schemes, Defendants willfully and with actual knowledge committed multiple acts over a span of time between 2014 to the present including, but not limited to, the unlawful theft and continuing

misappropriation of Magnesita's trade secrets, the unlawful theft and delivery of Magnesita's computerized information, and the use of electronic means to transmit such information through interstate commerce.

127.   The aforementioned acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961.

128.   Defendants directly and indirectly participated in the conduct of the enterprise affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(c).

129.   As a direct and proximate result of the racketeering activities of Defendants, Magnesita has been injured in its business and its property, including loss and misappropriation of trade secrets along with protected business information, all of which has been used to further the interests of Defendants, in derogation of Magnesita's rights.

## COUNT IV – BREACH OF CONTRACT
### (Griffin)

130.   Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

131.   Defendant Griffin entered into the Baker Secrecy Agreement and the LWB Refractories Company Confidentiality and Noncompetition Agreement.

132.   The Baker Secrecy Agreement and the LWB Refractories Company Confidentiality and Noncompetition Agreement are binding upon Griffin.

133.   Defendant Griffin has materially breached the Baker Secrecy Agreement and the LWB Refractories Company Confidentiality and Noncompetition Agreement by transferring Magnesita confidential, proprietary, and trade secret information via email to his personal Gmail account and, on information and belief, by disclosing without authorization Magnesita confidential, proprietary, and trade secret information to at his current employer, TNCR.

134.   As a result of Griffin's breaches of the Baker Secrecy Agreement and the LWB Refractories Company Confidentiality and Noncompetition Agreement Magnesita has been injured irreparably.

135.   Magnesita is entitled to full compensatory and consequential damages, as well as full injunctive relief.

## COUNT V – UNFAIR COMPETITION UNDER THE LANHAM ACT
### (15 U.S.C. § 1125)
### (All Defendants)

136.   Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

137.   The conduct of Defendants described above is conduct in or affecting commerce.

138.   The conduct of Defendants constitutes unfair competition with Magnesita.

139.   On information and belief, the conduct of Defendants has been deliberate, willful, intentional, and in bad faith.

140.   The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer actual damages and damage to its business, reputation, and goodwill.

141.   The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT VI – UNFAIR COMPETITION
## UNDER PENNSYLVANIA COMMON LAW
### (All Defendants)

142.   Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

143.   The conduct of Defendants described above is conduct in or affecting commerce.

144.   The conduct of Defendants constitutes unfair competition with Magnesita.

145.   On information and belief, the conduct of Defendants has been deliberate, willful, intentional, and in bad faith.

146.   The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer actual damages and damage to its business, reputation, and goodwill.

147.   The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer irreparable harm for which there is no adequate remedy at law.

### COUNT VII – CONVERSION
### UNDER PENNSYLVANIA COMMON LAW
### (All Defendants)

148.   Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

149.   Upon information and belief, Defendants have misappropriated, converted, and otherwise misused Magnesita computer files, electronic data, and confidential and proprietary information relating to Magnesita's fired and tempered dolomite bricks and other products for Defendants' use, to the exclusion of Magnesita's ownership rights in this property.

150.   Defendants' actions in converting Magnesita's computer files, electronic data, and confidential and proprietary information relating to Magnesita's fired and tempered dolomite bricks and other products were intentional and were undertaken for their benefit and to the detriment of Magnesita.

151.   The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer actual damages and damage to its business, reputation, and goodwill.

152.   Defendants' conduct is wrongful, willful, and malicious. Accordingly, Magnesita is entitled to recover from Defendants punitive damages, in addition to its actual damages and attorney's fees.

153.   The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT VIII – CIVIL CONSPIRACY
### (All Defendants)

154.   Magnesita incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

155.   Upon information and belief, Defendants, including Griffin, acted together, in concert, to commit one or more of the acts complained of herein:  i.e., misappropriation of trade secrets, unfair competition, and conversion.

156.   Upon information and belief, Defendants had an agreement, express or implied, to undertake these acts in order to injure Magnesita and to benefit Defendants, including the TNCR Defendants.

157.   The acts complained of herein constitute overt acts in furtherance of the conspiracy.

158.    Defendants are jointly and severally liable for each other's bad acts done in furtherance of the conspiracy.

159.    The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer actual damages and damage to its business, reputation, and goodwill.

160.    Defendants' conduct is wrongful, willful, and malicious. Accordingly, Magnesita is entitled to recover from Defendants punitive damages, in addition to its actual damages and attorney's fees.

161.    The wrongful conduct of Defendants has caused Magnesita to suffer and, absent intervention of the Court, will cause Magnesita to continue to suffer irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Magnesita demands and prays that this Court enter judgment in Magnesita's favor, granting the following relief against the Defendants:

a)    finding that Defendants have misappropriated Magnesita's trade secrets;

b)    finding that Defendants have committed unfair and deceptive acts in violation of Pennsylvania common law;

c)    finding that Defendants have committed unfair and deceptive acts

34

in violation of the Lanham Act;

d)   finding that Defendants have converted Magnesita's confidential and proprietary information;

e)   finding that Griffin has breached the Baker Secrecy Agreement and the LWB Refractories Company Confidentiality and Noncompetition Agreement;

f)   issuing preliminary and permanent injunctive relief restraining all Defendants and anyone associated with Defendants from acquiring, using or disclosing Magnesita's proprietary and confidential information, including Magnesita's trade secrets and other confidential documents, data or information;

g)   issuing preliminary and permanent injunctive relief requiring all Defendants and anyone associated with Defendants to account for and return to Magnesita all Magnesita proprietary and confidential information, including Magnesita's trade secrets and other confidential documents, data or information, in whatever form, including electronic, physical, and/or photographic form, in their possession, custody or control, including any copies thereof;

h)   issuing preliminary and permanent injunctive relief requiring Defendant Griffin to abide fully by the confidentiality, non-compete and non- solicitation covenants he agreed to during their employment with Magnesita;

      i)    entering judgment in Magnesita's favor and awarding full compensatory and consequential damages to Magnesita and against all Defendants jointly and severally, in an amount to be determined at trial, factoring in all interest, costs and expenses;

      j)    finding that this case is exceptional;

      k)    awarding Magnesita exemplary and punitive damages;

      l)    awarding Magnesita its reasonable attorneys' fees and costs incurred in bringing and having to pursue this action;

      m)    awarding Magnesita prejudgment and post-judgment interest on all amounts awarded; and

      n)    providing Magnesita with such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Magnesita hereby demands a trial by jury on all issues triable to a jury.

McNEES WALLACE & NURICK, LLC

By _____
    Alan R. Boynton, Jr.
    Pa. I.D. No. 39850
    100 Pine Street, Harrisburg, PA 17101
    Tel: 717-237-5352
    Fax: 717-260-1665
    ABoynton@mcneeslaw.com

Benjamin E. Leace, *Pro Hac* to be submitted
BELeace@ratnerprestia.com
Christopher H. Blaszkowski, *Pro Hac* to be submitted
CBlaszkowski@ratnerprestia.com
RatnerPrestia
2200 Renaissance Blvd.
Suite 350
King of Prussia, PA 19406
Tel: 610-407-0700
Fax: 610-407-0701

Victor A. Balancia, *Pro Hac* to be submitted
VBalancia@ratnerprestia.com
RatnerPrestia
1090 Vermont Avenue, NW
Suite 1200
Washington, DC 20005
Tel: 205-715-2898
Fax: 610-407-0701

Dated:  September 6, 2017